**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KYLE KOESTER,**
                            **Plaintiff,**

     **v.**                                                                        **6:15-CV-336**

**COMMISSIONER OF SOCIAL SECURITY,**

                            **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

      Plaintiff Kyle Koester brought this action under the Social Security Act, 42 U.S.C. § 405 (g), to review a final determination by the Commissioner of Social Security denying his application for benefits.  Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his application for benefits is not supported by substantial evidence and is contrary to applicable legal standards.  Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.    BACKGROUND**

      On January 17, 2012, Plaintiff filed an application for Social Security Insurance ("SSI") benefits.  The claim was denied by initial determination on April 30, 2012.  Plaintiff filed a timely request for a hearing on June 1, 2012.  Administrative Law Judge Christine Coughlin presided over a video hearing on April 22, 2013.  The ALJ issued an

unfavorable decision on December 6, 2013, which the Plaintiff appealed. The Social Security Appeals Council denied his appeal on January 29, 2015. This action followed.

As indicated above, Plaintiff brings this action under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the Commissioner's final decision.

## II.     FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in his memorandum of law. The Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III.    THE COMMISSIONER'S DECISION

The ALJ engaged in the required five-step analysis to determine whether a claimant qualifies for disability benefits. See Social Security Administrative Record ("R."), dkt. # 9-2, at 15-23. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since April 14, 2011, the application date. R. at 16. Second, the ALJ concluded that Plaintiff suffered from the severe impairments of post-traumatic stress disorder, alcohol abuse, degenerative joint disease (bilateral knees), degenerative disc disease of the lumbar spine, insomnia, hyperlipidemia, deep vein thrombosis, obstructive sleep apnea, and lupus. Id. The ALJ concluded that Plaintiff's impairments "are severe within the meaning of the Code of Federal Regulations because they cause more than minimal limitations in the claimant's ability to perform basic work activities." Id. The ALJ found, however, that although the record contained diagnoses of gastroesophegeal reflux disease, there was no indication that this

condition caused Plaintiff more than minimal functional limitations.  Id.

Turning to the next step in the evaluation process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically exceeded the severity of one of the impairments listed in the Social Security regulations.  R. at 17.   While Plaintiff's impairments were severe, the record lacked the specific clinical signs and diagnostic findings required to meet or equal the requirements in the Social Security regulations.  Id.  Plaintiff failed to show a mental impairment that resulted in a marked restriction of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.  Id.  Plaintiff failed to show that he had a disorder of the spine resulting in a compromise of a nerve root or the spinal cord, with either (1) nerve root compression, or (2) spinal arachnoiditis, or (3) lumbar spinal stenosis, resulting in pseudoclaudication.  Id.  Plaintiff also failed to show that he had major dysfunction of a major peripheral weight-bearing joint.  Id.

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567 (a),[1]

> except with the ability to lift and/or carry 10 pounds occasionally, less than 10 pounds frequently; stand and/or walk up to 2 hours in an 8 hour workday; [s]it up to 6 hours in an 8 hour workday; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally balance and stoop; never kneel, crouch, or crawl; limited to occasional pushing/pulling with the bilateral lower extremities; limited to simple and routine tasks; limited to a static work environment, meaning one in which there is little change; limited to frequent interaction with supervisors, co-workers, and the general public; the claimant

---

[1] Sedentary work is defined as the ability to lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently; stand or walk two hours in an eight-hour workday; and sit six hours in an eight-hour workday. 20 C.F.R. 404.1567 (a)

may need to use a cane for ambulation.

Id. The ALJ summarized the medical evidence and Plaintiff's hearing testimony. R. at 19-21. Plaintiff testified that his "physical disabilities" made it "very hard" to climb stairs, citing the degeneration of his knees, his back surgery, his deep vein thrombosis, and his musculoskelatal ailments. Id. Plaintiff testified that he had a hard time standing and sitting for prolonged periods of time. Id. Psychologically, Plaintiff stated that he had a hard time remembering information, and suffers from "anxiety, depression and PTSD." Id. Plaintiff further testified that he did not "feel comfortable" around others. Id. The ALJ found Plaintiff's symptoms reasonably connected to medically determinable impairments, but found "[plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible." Id.

The ALJ gave "great weight" to two consultative examinations to support her findings. Dr. Dennis Noia, a consultative examiner for psychiatry, concluded Plaintiff did not objectively suffer from mental disease because Plaintiff's "recent and remote memory skills were intact," and Plaintiff has in the past denied symptoms of anxiety, depression, and PTSD. R. at 20. Dr. Kalyani Ganesh, consultative examiner for internal medicine, concluded Plaintiff does not have "gross limitations for sitting," but has "moderate to severe limitations with standing, walking, climbing, lifting, carrying, pushing, and pulling." R. at 21. Despite Dr. Noia's and Dr. Ganesh's findings, the ALJ incorporated several further limitations into the RFC in deference to Plaintiff's subjective complaints at the hearing. Id. The ALJ limited Plaintiff to simple tasks and a static work environment. Id.

Next, the ALJ consulted a vocational expert to determine Plaintiff's past relevant

work.  R. at 22.  The vocational expert listed "patrol officer; marksmanship instructor; carpenter."  Id.  The ALJ determined that Plaintiff could not perform any past relevant work.  Id.  The vocational expert further testified that, given Plaintiff's RFC, Plaintiff could perform all or substantially all of the requirements of several other occupations, such as ticket seller, cashier, and lens inserter.  Id.  The ALJ concluded that "considering the claimant's age, education, work experience and [RFC]," Plaintiff is able to find work that exists in significant numbers in the national economy.  Id.  As such, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  R. at 23.

## IV.   STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries.  See 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, that court must bear in mind that the Act is "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**V.    DISCUSSION**

Plaintiff offers two grounds challenging the ALJ's opinion. The Court will address each in turn.

### A.    Failure to Develop the Administrative Record

Plaintiff first argues that the ALJ erred by failing to develop the administrative record. Plaintiff claims that the ALJ failed to develop the record because the ALJ did not obtain Veterans Administration ("VA") records in addition to the medical records supplied. Plaintiff claims that the ALJ did not obtain the medical records corresponding to the 14 months preceding the video hearing held on April 22, 2013. Plaintiff's brief states: "[the ALJ] only had available Veterans Administration medical records for the period of time from 9/15/2009 to 02/16/2012." See dkt. # 15 at 9. However, the ALJ's obligation is to complete a medical history for at least the 12 months preceding the date on which Plaintiff filed his initial SSI application, here January 17, 2012. See 20 C.F.R.

§ 416.912(d). Nonetheless, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim. See Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996).

As stated by Plaintiff, and as demonstrated by the record, the ALJ had medical records for the 12 months preceding Plaintiff's initial application date. The record also included hospital records from Oneida Healthcare Center, dated October 22, 2008 through December 23, 2011. See R. at 282-523. The record contained hospital records from the Workers Compensation Board, dated April 18, 2011 through December 29, 2011. See R. at 524-556. Hospital records from the VA Medical Center Syracuse, dated September 15, 2009 through February 16, 2012 also existed in the record. See R. at 788-902. The ALJ supplemented these hospital records with two consultative examinations on April 19, 2012. See R at 901-11. Therefore, the ALJ fulfilled her obligation to develop the administrative record for at least the 12 months preceding Plaintiff's initial SSI filing date. That records now exist that may be helpful to Plaintiff's case does not implicate the ALJ's original duty to develop the record for the time period within which the ALJ made her determination. Subsequent development of the record was not the ALJ's responsibility.

Further, Plaintiff has an obligation to furnish medical records. As stated by the Supreme Court, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to" provide such records. See Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987). See also 20 C.F.R. § 404.1512

(a) ("you must furnish medical records and other evidence that we can use to reach conclusions."); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment). Plaintiff was represented by counsel, and had access to the VA records. Therefore, considering the sufficiency of the record developed by the ALJ and Plaintiff's failure to furnish records within his control, Plaintiff's claim is without merit.

Next, to the extent Plaintiff points to VA disability ratings in an attempt to challenge the Appeals Council's decision, Plaintiff's claim is without merit. The disability ratings of other governmental agencies are not binding on the Social Security Administration ("SSA"). See 20 C.F.R. § 404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. . . . [A] determination made by another agency that you are disabled or blind is not binding on us.").

While VA disability ratings are not binding on SSA, courts in the Second Circuit have held that the ratings should be entitled to "some weight." See Lawler v. Astrue, 2011 WL 5825781, at *9 (N.D.N.Y. Nov. 14, 2011) (quoting Hankerson v. Harris, 636 F.2d 893, 897 (2d Cir. 1980)). The ALJ's opinion discusses the ways in which Plaintiff's sleep apnea played into the VA's 80% disability rating. When the ALJ weighed the VA's evidence against other evidence in the record, the ALJ found there was no objective evidence to support a severe sleep apnea determination. R. at 21. As such, the ALJ afforded the VA rating "some weight" by comparing that opinion to other medical evidence in the record. Plaintiff also points to an updated VA disability report

Plaintiff furnished to the Appeals Council, dated October 24, 2014. R. at 86. Even assuming that the updated VA disability rating report were binding on SSA, this new report corresponds to a date subsequent to the period that the ALJ examined. The updated VA report Plaintiff furnished to the Appeals Council details Plaintiff's impairments through October 24, 2014. Therefore, the conclusions and ratings contained within the report do not implicate the ALJ's duty to develop the record for the 12 months preceding the date on which Plaintiff filed his initial SSI application. Plaintiff's motion will therefore be denied in this respect.

      **B.    Consultative Examinations**

Plaintiff next argues that ALJ failed to follow the Commissioner's own regulations when obtaining consultative examinations. Plaintiff argues that the ALJ failed to contact a treating source within the VA for a consultative opinion, and instead used SSA's "usual source" at Industrial Medical Associates. The question here is whether the ALJ erred by failing to contact Plaintiff's treating physician for a consultative examination.

20 C.F.R. § 404.1519 lists several standards for determining when the SSA will obtain a consultative examination in connection with a disability determination. 20 C.F.R. § 404.1519 (a) provides:

> (a) If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination. See § 404.1512[1] for the

---

[1] 20 C.F.R. § 404.1512 in relevant part provides:

(d) Our responsibility. . . . We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

(1) "Every reasonable effort" means that we will make an initial request for

procedures we will follow to obtain evidence from your medical sources and § 404.1520b for how we consider evidence. Before purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file.

(b) Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

Id. 20. C.F.R. § 404.1519 (i) provides the conditions under which sources other than a treating source will be used for consultative examinations:

We will use a medical source other than your treating source for a purchased examination or test in situations including, but not limited to, the following

---

evidence from your medical source.
. . .
(e). We may ask you to attend one or more consultative examinations at our expense. . . . Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

situations:

(a) Your treating source prefers not to perform such an examination or does not have the equipment to provide the specific data needed;

(b) There are conflicts or inconsistencies in your file that cannot be resolved by going back to your treating source;

(c) You prefer a source other than your treating source and have a good reason for your preference;

(d) We know from prior experience that your treating source may not be a productive source, e.g., he or she has consistently failed to provide complete or timely reports.

Id.

The ALJ obtained two consultative examinations from Industrial Medical Associates. The Disability Determination Explanation states that "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim." R. at 100. To develop the record, the ALJ obtained reports from Dr. Noia, who submitted a mental health report, and Dr. Ganesh, who submitted a report detailing Plaintiff's physical impairments. The ALJ's opinion provides that Plaintiff's treating source was not contacted to perform a consultative examination because "[t]here is no treating source to perform the [consultative examination]." R. at 101.

While the ALJ briefly referenced the prospect of contacting Plaintiff's treating source for a consultative examination in her opinion, the ALJ did not discuss the Plaintiff's treating source in her opinion. The ALJ also failed to provide specific reasons for failing to contact Plaintiff's treating source to perform a consultative examination. In light of the regulatory requirement that the ALJ make a "reasonable effort" to contact a claimant's treating source for a consultative examination, the Court is presented with

11

the question of whether there are circumstances under which it is "reasonable" to not contact a treating source.  The Court finds that the ALJ's erred by failing to contact Plaintiff's treating source for a consultative examination. Further, the Court finds that the ALJ did not satisfy the "reasonable effort" requirement in 20 C.F.R. §404.1512.

Generally, courts in this Circuit have interpreted "reasonable effort" to mean a duty to contact a treating physician.  See, e.g., Stokes v. Astrue, 2012 WL 695856, at *10 (N.D.N.Y. March 1, 2012) (quoting Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sep. 17, 2008) ("The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' physician provisions in the regulations.")).  Courts have also held that "failure to contact the treating physician constitutes a breach of the ALJ's duty to develop the record and provides a basis for remand."  Stokes at 11 (citing Lawton v. Astrue, No. 1:08-CV-0137, 2009 WL 2867905, at *16 (N.D.N.Y. Sep. 2, 2009)).  In cases in which the ALJ possesses a claimant's complete medical history, the lack of a treating source statement will not render the record incomplete. See Rosa v. Callahan, F.3d 72, 79 n. 5 (2d Cir. 1999).  However, although a lack of a treating source statement will not necessarily render the record incomplete, the regulations provide that the ALJ will make an attempt to request a treating source statement. See Johnson v. Astrue, No. 10-CV-2321, 2011 WL 434802, at *10 (E.D.N.Y. 2011 Sep. 16, 2011); Robins v. Astrue, No. 10-CV-3281, 2011 WL 2446371 at *3 (E.D.N.Y. June 15, 2011).

Despite the ALJ's general duty to obtain medical source statements from a claimant's treating physician, there are several circumstances under which an ALJ's duty will be excused.  First, when the record is itself complete and contains a complete

medical history, the ALJ is not required to obtain treating source medical statements. See, e.g., Rosa, F.3d 72, 79 n. 5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.")). Second, pursuant to 20. C.F.R. § 404.1519(i)(d), the ALJ need not consult treating physicians for medical source statements if "[the ALJ knows] from prior experience that [the] treating source may not be a productive source." In this case, as Defendant points out, the VA does not permit its physicians and psychologists to provide medical source statements. See Program Operations Manual System ("POMS") DI 22505.007 ("As a matter of policy, the VA does not permit its physicians and psychologists to provide this type of opinion statement.").

    The facts in this case indicate that the ALJ erred in not contacting Plaintiff's treating source. Nothing excused the ALJ's duty to attempt to contact a claimant's treating source. The record was incomplete, which was why the ALJ contacted consultative examiners in the first place. The ALJ did not explain this failure to contact a treating physician, nor did she explain whether she considered the POMS guidelines or applied them to her decision. The ALJ also failed to explain why she did not contact Plaintiff's treating physician for a consultative examination at the same time she contacted Dr. Noia and Dr. Ganesh. To determine whether the ALJ applied proper legal standards, the Court must know what standards the ALJ used. While Defendant states several reasons why the ALJ may have chosen not to contact Plaintiff's treating source, the Court's analysis is limited to the record. See dkt. # 16 at 9. The Supreme

Court has held that "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Auto Insurance Co., 463 U.S. 29 (1983) (explaining the Supreme Court's unwillingness to accept appellate counsel's post-hoc rationalizations for agency action).

Given the importance of the treating physician rule in general, and the specific "reasonable effort" requirements of § 404.1512, the Court concludes that the ALJ erred in failing to contact Plaintiff's treating physician for a consultative examination. "Reasonable effort" cannot mean "no effort," and certainly not "no effort" coupled with "no explanation." Several courts in the Second Circuit have adopted this approach in social security cases. See Robins 2011 WL 2446371 at *11 (E.D.N.Y. 2011); Stokes at *10. When the ALJ realized consultative examinations were necessary to supplement the record, the ALJ chose not to contact Plaintiff's treating source and stated "there is no treating source available to perform the CE." R. at 100. However, the ALJ had before her a number of records from Dr. King, Plaintiff's treating physician within the VA, and there is no evidence on the record that implicates any of the factors of § 404.1519 (i). For example, there is no evidence that Dr. King declined to perform a consultative examination. See § 404.1519 (i) (a). There is no evidence that Plaintiff preferred a source other than his treating source. See § 404.1519 (i) (c). Dr. King was one of Plaintiff's main treating sources. The Court is also not convinced by Defendant's POMS guidelines argument. Had the ALJ included in her opinion references to the POMS guidelines, the Court would review the ALJ's analysis accordingly. For example, the POMS guidelines may have been a good reason for ALJ not to contact Plaintiff's

treating source, pursuant to § 404.1519 (i).  See § 404.1519 (i) (d) ("We know from prior experience that your treating source may not be a productive source, e.g., he or she has consistently failed to provide complete or timely reports.").  However, the Court is unwilling to adopt appellate counsel's post-hoc rationalizations of the legal standards the ALJ applied.

The Court finds that the ALJ erred in failing to abide by regulations that govern consultative examinations.  On remand, the ALJ is to contact Plaintiff's treating source within the VA, or provide a full explanation of her failure to do so.

## VI. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for judgement on the pleadings is **GRANTED** in part and denied in part.  The motion is **GRANTED** with respect to Plaintiff's claim that the ALJ failed to properly consider and/or explain her decision not to consult Plaintiff's treating physician, and **DENIED** in all other respects.  The Commissioner's motion for judgement on the pleadings is **GRANTED** in part and **DENIED** in part on the same basis.

The case is **REMANDED** to the ALJ for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: September 28, 2016

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge